No. CR 06 00748 RMW

SEALED BY ORDER OF THE COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## *SAN JOSE DIVISION*

FILED

2006 NOV 15 A 11: 54

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J

## THE UNITED STATES OF AMERICA

### *vs.*

## ANDREW THOMAS RUSSO, DENNIS LEBORGNE, DAVID JOHN, and JOHN F. TUITE

# INDICTMENT

**COUNT ONE:** Title 21, United States Code, Sections 846- Conspiracy to Distribute Controlled Substances.

**COUNT TWO:** Title 18, United States Code, Sections§ 1956(h) - Conspiracy to Launder Money.

**COUNTS THREE THROUGH TEN**-: Title 18, United States Code, Section §1956(a)(1)(4)(i) - Promotional Money Laundering)

*A true bill.*

*Foreperson*

*Filed in open court this* 15R *day of* November

*A.D. 2006*

UNITED STATES MAGISTRATE JUDGE

**Bail. $** _____

NO BAIL ARREST WARRANT AUTHORIZED FOR EACH DEFENDANT

| DOCUMENT NO. | CSA's INITIALS |
|---|---|
| 1 | 0 |
| DISTRICT COURT CRIMINAL CASE PROCESSING | |

KEVIN V. RYAN (CASBN 118321)
United States Attorney

FILED

2006 NOV 15  A 11: 54

RICHARD W. WICKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

SEALED BY ORDER
OF THE COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CR 06 00748 RMW
HPL

| UNITED STATES OF AMERICA, | ) | No. |
|---|---|---|
| Plaintiff, | ) | |
| | ) | VIOLATIONS: 21 U.S.C. § 846 – |
| v. | ) | Conspiracy to Distribute Controlled |
| | ) | Substances; 18 U.S.C. § 1956(a)(1)(A)(i)  – |
| | ) | Money Laundering; § 1956(h) - Conspiracy |
| ANDREW THOMAS RUSSO, | ) | to Commit Money Laundering; 21 U.S.C. §§ |
| DENNIS LEBORGNE, a/k/a Frenchy, | ) | 853(a) – Drug Forfeiture; and 18 U.S.C. § |
| DAVID JOHN, and | ) | 982(a)(1) – Money Laundering Forfeiture |
| JOHN F. TUITE, | ) | |
| | ) | SAN JOSE VENUE |
| Defendants. | ) | |

I N D I C T M E N T

The Grand Jury charges:

BACKGROUND

At times relevant to this Indictment:

CONTROLLED SUBSTANCES ACT

1.      The United States Drug Enforcement Administration ("DEA") was the agency of

the United States charged with the responsibility of enforcing the controlled substances laws and

regulations of the United States.

/ / /

/ / /

DOCUMENT NO.        CSA's
INITIALS

1  e

DISTRICT COURT
CRIMINAL CASE PROCESSING

U.S. v. RUSSO, et al.
INDICTMENT                            1

1        2.    DEA was also responsible for, among other things, regulating the pharmaceutical

2    industry, medical professionals, researchers, manufacturers, and distributors in complying with

3    the Controlled Substances Act ("CSA"), codified at 21 U.S.C. § 801 et seq.  The CSA governed

4    the manufacture, distribution, and dispensing of controlled substances in the United States.

5        3.    Pharmacies dispensing controlled substances were required to register with the

6    DEA.  A separate registration was required for each principal place of business where controlled

7    substances were distributed or dispensed.  A DEA registered pharmacy could engage in activities

8    only as authorized by the state where the pharmacy was located.

9        4.    The CSA was the federal law that placed all controlled substances into one of five

10   categories, or schedules, according to the drug's potential for abuse, physical and psychological

11   dependence liability, and current accepted medical use.  Various prescription drugs were

12   scheduled substances under the CSA.  There were five schedules of controlled substances -

13   schedules I, II, III, IV, and V.  Abuse of Schedule III drugs may lead to moderate or low physical

14   dependence or high psychological dependence.  Abuse of Schedule IV drugs may lead to more

15   limited physical dependence or psychological dependence relative to the drugs or other

16   substances in Schedule III.

17       5.    Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

18       A prescription for a controlled substance to be effective must be
     issued for a legitimate medical purpose by an individual practitioner
19   acting in the usual course of his professional practice.  The
     responsibility for the proper prescribing and dispensing of controlled
20   substances is upon the prescribing practitioner, but a corresponding
     responsibility rests with the pharmacist who fills the prescription. An
21   order purporting to be a prescription issued not in the usual course of
     professional treatment or in legitimate and authorized research is not
22   a prescription within the meaning and intent of section 309 of the Act
     (21 U.S.C. 829) and the person knowingly filling such a purported
23   prescription, as well as the person issuing it, shall be subject to the
     penalties provided for violations of the provisions of law relating to
24   controlled substances.

25       6.    Phentermine, a stimulant, was classified under federal narcotics laws as a

26   Schedule IV controlled substance.

27   / / /

28   / / /

U.S. v. RUSSO, et al.
INDICTMENT            2

## STATE LAWS AND MEDICAL ASSOCIATION POSITIONS

7.      An example of some state laws that imposed requirements upon doctors and healthcare professionals to take certain steps before they could prescribe, distribute, or dispense controlled substances included:

### CALIFORNIA LAW

Business and Professions Code

> Section 4110. (a) No person shall conduct a pharmacy in the State of California unless he or she has obtained a license from the board. A license shall be required for each pharmacy owned or operated by a specific person. A separate license shall be required for each of the premises of any person operating a pharmacy in more than one location. The license shall be renewed annually. The board may, by regulation, determine the circumstances under which a license may be transferred.

> Section 4120. (a) A nonresident pharmacy shall not sell or distribute dangerous drugs or dangerous devices in this state through any person or media other than a wholesaler who has obtained a license pursuant to this chapter or through a selling or distribution outlet that is licensed as a wholesaler pursuant to this chapter without registering as a nonresident pharmacy.

> Section 4067. (a) No person or entity shall dispense or furnish, or cause to be dispensed or furnished, dangerous drugs or dangerous devices, as defined in Section 4022, on the Internet for delivery to any person in this state without a prescription issued pursuant to a good faith prior examination of a human or animal for whom the prescription is meant if the person or entity either knew or reasonably should have known that the prescription was not issued pursuant to a good faith prior examination of a human or animal, or if the person or entity did not act in accordance with Section 1761 of Title 16 of the California Code of Regulations.

Health and Safety Code

> Section 11153. (a) A prescription for a controlled substance shall only be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. Except as authorized by this division, the following are not legal prescriptions: (1) an order purporting to be a prescription which is issued not in the usual course of professional treatment or in legitimate and authorized research; or (2) an order for an addict or habitual user of controlled substances, which is issued not in the course of professional treatment or as part of an authorized narcotic treatment program, for the purpose of providing the user with controlled substances, sufficient to keep him or her comfortable by maintaining customary use.

### NORTH CAROLINA LAW

21 NCAC 46.1801 Right to Refuse a Prescription

> (b) A pharmacist shall not fill or refill a prescription order if the pharmacist actually knows or reasonably should know that the order was issued without a physical

U.S. v. RUSSO, et al.
INDICTMENT                                        3

examination of the patient and in the absence of a prior prescriber-patient relationship, unless:

(1) the prescription order was issued for the patient by a psychiatrist;

(2) the prescription order was issued for the patient after discussion of the patient status with a treating psychologist, therapist, or physician;

(3) the prescription order was ordered by a physician for flu vaccinations for groups of patients or members of the public;

(4) the prescription order was for prophylactic purposes, such as the ordering of antibiotics by a pediatrician for members of a child's family when the child has a positive strep test;

(5) the prescription order was an emergency order for medication related to pregnancy prevention; and

(6) the prescription order was an order for medications to be taken by groups traveling to foreign countries.

21 NCAC 46.1805 Dispensing Drugs without a Prescription

The dispensing of or any delivery of a prescription drug, including the surrender of control or possession in any manner which results in a delivery of a prescription drug, without a valid prescription order is unlawful. Refilling a prescription for a prescription drug without authorization is unlawful.

21 NCAC 46.1811 Excessive Dispensing of Prescription Drugs

Pharmacists shall not dispense and permit holders shall not allow a pharmacist to dispense prescription drugs at such a rate per hour or per day as to pose a danger to the public health or safety.

8.      The American Medical Association ("AMA") was the largest association of medical doctors in the United States. Its purpose was to advance the interests of physicians, to promote better public health, to lobby for medical legislation, and to raise money for medical education. Since at least 1999, the AMA publicly announced its position that a physician who offers a prescription to a patient solely on the basis of an online questionnaire without ever having examined the patient has generally not met the appropriate medical standards of care.

9.      The Federation of State Medical Boards of the United States, Inc. ("FSMB") was a national organization comprised of the 70 medical boards of the United States, the District of Columbia, Puerto Rico, Guam and the U.S. Virgin Islands. On behalf of its membership, FSMB's mission was to improve the quality, safety, and integrity of health care through the development and promotion of high standards for physician licensure and practice. Since at least 2000, the FSMB has recognized that Internet web sites permitting customers to obtain prescription drugs without an adequate evaluation by a physician poses an immediate threat to public health and safety. As a result, FSMB has publicly announced its position that the

U.S. v. RUSSO, et al.
INDICTMENT                                    4

1   prescribing of medications by physicians based solely on an online questionnaire fails to meet an

2   acceptable standard of care and is outside the bounds of professional conduct.

3                                      INTERNET PHARMACIES

4           10.     Individuals that operated web sites to sell pharmaceuticals generally created an

5   Online Pharmacy Affiliate Program ("OPAP") or joined an existing OPAP to manage their e-

6   commerce business.  OPAPs were simply contractual agreements establishing an e-commerce

7   business to oversee the acquisition, sale and distribution of pharmaceuticals and other related

8   products.  OPAPs generally consisted of five (5) or fewer interested parties involved in an online

9   transaction: (1) the customer; (2) an Affiliate site; (3) a Merchant site; (4) a Physician Network

10  and; (5) a Pharmacy Network. OPAP maintained merchant web sites ("Merchants") to facilitate

11  the sale of their products.  OPAPs established accounting systems to receive and make payments;

12  opened bank accounts to hold operating capital; recruited affiliate web sites ("Affiliates"),

13  physicians and pharmacies; contracted for services provided by credit card and overnight

14  shipping companies; purchased and/or developed and maintained sophisticated software to track

15  all aspects of their business; and, provided Affiliates, Physician Networks and Pharmacy

16  Networks with e-business assistance and instruction.

17          11.     Affiliate websites were the web sites the customer first saw when attempting to

18  purchase the OPAP's products.  The customers did not purchase the pharmaceuticals from the

19  Affiliate websites, but were usually electronically re-directed customers to the Merchant site

20  where the purchase occurred.

21          12.     Merchant web sites were the online stores from which customers ultimately

22  purchased pharmaceuticals.  These sites took the customer's order, collected the money via credit

23  card or other electronic means, directed OPAP physicians to approve drug orders, fulfilled the

24  orders through a Pharmacy Network and shipped the products to the customer.  When a customer

25  entered a Merchant web site and clicked to purchase an item, the Merchant web site prompted the

26  customer to provide his/her biographical information, shipping information, payment method and

27  a medical history in the form of an online questionnaire.  The data provided by the customer was

28

U.S. v. RUSSO, et al.
INDICTMENT                                  5

1  stored in a database that was accessible through a web-based interface by OPAP physicians who

2  viewed and approved, and pharmacies that filled and shipped, pending orders.

3       13.    A Physician Network used by the OPAP consisted of one or more doctors who

4  were recruited and contracted by the OPAP to approve drug orders for customers ordering from

5  the Merchant site. After the customer submitted a request to purchase pharmaceuticals, the

6  Merchant site electronically stored the order details until the order was accessed by a network

7  physician. The physician accessed the Merchant site's "back end" by providing his or her user

8  identification and password. This "back end" consisted of a database and administrative tools

9  that were not accessible to the general public. The physician subsequently reviewed the

10 customer's request, clicked a box to approve the order and then clicked a button to submit the

11 now approved order to the Pharmacy Network for filling.

12      14.    An OPAP used one or more contracted pharmacies of a Pharmacy Network to fill

13 a customer's drug order. Similar to the network physician, an employee of the network

14 pharmacy accessed the Merchant "back end" site by providing a user name and password and

15 then identified the orders that the pharmacy could fill and ship. Through web-based software, the

16 Merchant site generated a label for the pill bottle containing pertinent information about the

17 consumer, the pharmaceutical, the approving physician and the participating pharmacy. The

18 software also generated the appropriate pharmaceutical advisory/contraindication sheet and a

19 shipping label bearing the consumer's name and address. Once the participating pharmacy filled

20 the prescription, they packaged it, attached the preprinted label and shipped it to the customer via

21 a commercial courier service, most frequently Federal Express or United Parcel Service.

22                          DEFENDANTS AND RELATED ENTITIES

23      15.    UNITED CARE PHARMACY obtained a DEA retail pharmacy registration on

24 June 6, 2005 for 2420 S. 17th Street, Unit C, Wilmington, North Carolina. UNITED CARE

25 PHARMACY's DEA registration was surrendered on March 8, 2006 after the North Carolina

26 Board of Pharmacy executed a Summary Suspension Order.

27      16.    ANDREW RUSSO was the president and sole director of UNITED CARE

28 PHARMACIES, INC. and was the organizer of UNITED CARE PHARMACY, LLC. UNITED

U.S. v. RUSSO, et al.
INDICTMENT                                    6

1  CARE PHARMACIES, INC., was a Nevada corporation incorporated on or about May 26, 2005.

2  UNITED CARE PHARMACY, LLC was a North Carolina Limited Liability Company organized

3  on or about May 23, 2005. ANDREW RUSSO was the Chief Operating Officer ("C.O.O.") of

4  UNITED CARE PHARMACY. UNITED CARE PHARMACY distributed and dispensed

5  controlled substances and other prescription drugs for OPAP/OPANs operated by other

6  individuals and also distributed and dispensed controlled substances for an OPAP/OPAN

7  controlled by the same individuals that operated UNITED CARE PHARMACY.

8      17.    DENIS LEBORGNE was ANDREW RUSSO's partner and the Chief Technology

9  Officer ("C.T.O.") in the operations of UNITED CARE PHARMACY and the associated web

10 sites. From in or about March 2005 through at least January 2006, DENIS LEBORGNE was the

11 C.T.O. for UNITED CARE PHARMACY. DENIS LEBORGNE's responsibilities included the

12 recruitment of affiliates, securing online payment processing, establishing merchant accounts,

13 and software integration.

14     18.    Defendant DAVID JOHN was the Chief Financial Officer ("C.F.O.") for

15 UNITED CARE PHARMACY. From in or about March 2005 through in or about November

16 2005, DAVID JOHN's responsibilities as C.F.O. included the ordering of pharmaceuticals,

17 record-keeping, and collecting payments from the web site owners.

18     19.    Defendant JOHN F. TUITE, Registered Pharmacist, was a pharmacist licensed in

19 the State of North Carolina. Defendant TUITE authorized fraudulent prescriptions to be filled by

20 UNITED CARE PHARMACY between in or about September 2005 and March 2006.

21                              OTHER ENTITIES

22     20.    MSN Hotmail ("Hotmail") was an Internet Service Provider ("ISP") with

23 computer servers located in the Northern District of California.

24     21.    Yahoo! was an ISP with computer servers located in the Northern District of

25 California.

26     22.    Federal Express ("Fed Ex") was a commercial shipping company that provided

27 express, ground, freight, and expedited shipping services to its customers across the United

28 States.

U.S. v. RUSSO, et al.
INDICTMENT                          7

23.    United Parcel Service ("UPS") was a commercial shipping company that provided express, ground, freight, and expedited shipping services to its customers across the United States.

24.    AmerisourceBergen was a pharmaceutical wholesaler located in Valley Forge, Pennsylvania. Payments to Amerisource or Bergen Brunswig after August 2001 went to AmerisourceBergen.

25.    Stat Pharmaceuticals was a pharmaceutical wholesaler located in Santee, California.

26.    Heartland Payment Systems ("Heartland") was a credit and debit card, payroll and related processing services company that provided servcies to retail merchants throughout the United States.

COUNT ONE:        (21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances)

27.    The factual allegations of paragraphs 1 through 26 above are realleged and incorporated herein by reference.

28.    Beginning no later than in or about March 2005, and continuing until on or about March 8, 2006, in the Northern District of California and elsewhere, defendants,

ANDREW THOMAS RUSSO,
DENIS LEBORGNE,
DAVID JOHN, and
JOHN F. TUITE,

did knowingly conspire and agree with others known and unknown to the Grand Jury, to:

(a)    distribute and dispense various Schedule IV controlled substances, including but not limited to, quantities of Phentermine, a Schedule IV controlled substance, other than for a legitimate medical purpose, and not in the course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(2), and Title 21, Code of Federal Regulations, Section 1306.04; and

(b)    use a communication facility in committing and in causing and facilitating the distribution and dispensing of Schedule IV controlled substances, including but not limited to, Phentermine, a Schedule IV controlled substance, other than for a

U.S. v. RUSSO, et al.
INDICTMENT                                8

legitimate medical purpose and not in the usual course of professional practice, in

violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(2), and

843(b), and Title 21, Code of Federal Regulations, Section 1306.04.

### OBJECT OF THE CONSPIRACY

29.    It was the object of the conspiracy to sell, via the Internet, controlled substances to

consumers in the United States and to distribute and dispense those controlled substances from

UNITED CARE PHARMACY. Defendants' process for selling controlled substances violated

the federal requirements under the CSA, regulations set forth in the Code of Federal Regulations,

and various state laws requiring that controlled substances be dispensed only for a legitimate

medical purpose and in the usual course of professional medical practice.

### MANNER AND MEANS OF THE CONSPIRACY

30.    It was a part of the conspiracy that the defendants established a pharmacy and

associated the pharmacy with an OPAP operated by other individuals to distribute

pharmaceuticals as well as distributing pharmaceuticals for an OPAP operated by several

members of the conspiracy to citizens of the United States, without requiring a face-to-face

meeting or any consultation with a physician. The defendants obtained money from OPAP

owners for distributing and dispensing drug orders obtained via the Internet. In addition, the

defendants obtained money from customers through web sites that represented that a physician

would review an online health questionnaire completed by the customer and issue a valid and

lawful prescription that would be filled by a licensed pharmacy, when in truth and in fact, there

was no meaningful physician review prior to approval, and no valid and lawful prescription was

issued.

31.    It was further part of the conspiracy that the defendants caused the controlled

substances to be distributed and dispensed to customers without: an adequate patient history;

performing a mental or physical exam; using appropriate diagnostic or laboratory testing; or

providing a means to monitor medication response. Generally, the order form was the only

contact with the customer.

32.    It was further part of the conspiracy that defendants ANDREW THOMAS

U.S. v. RUSSO, et al.
INDICTMENT                                    9

1  RUSSO, DENIS LEBORGNE, DAVID JOHN, and JOHN F. TUITE were owners, operators,

2  corporate officers, directors, and/or managers of the pharmacy and company that operated certain

3  of the web sites through which defendants sold and distributed controlled substances.

4        33.    It was further part of the conspiracy that defendant JOHN F. TUITE was a

5  pharmacist who authorized the distribution and dispensing of controlled substances, including

6  Phentermine, after failing to confirm that there was a legitimate physician/patient relationship

7  established prior to distributing the controlled substances and did so for other than a legitimate

8  medical purpose and not in the usual course of professional practice.

9  OVERT ACTS

10        34.    In furtherance of the conspiracy and to achieve its objects, the following overt

11  acts, among others were committed in the Northern District of California and elsewhere:

12      a.    On March 22, 2005, ANDREW THOMAS RUSSO contacted Healthcare

13          Consultants via his e-mail account, tomrusso58@hotmail.com, to obtain

14          information to set up UNITED CARE PHARMACY.

15      b.    In or about April 2005, DENIS LEBORGNE sent an e-mail to

16          tomrusso58@hotmail.com and davidjohncpa@yahoo.com setting out the business

17          plan for UNITED CARE PHARMACY.

18      c.    In or about April 2005, DAVID JOHN sent an e-mail to

19          tomrusso58@hotmail.com setting out a business plan for UNITED CARE

20          PHARMACY.

21      d.    On or about April 19, 2005, ANDREW THOMAS RUSSO submitted an

22          electronic application to the DEA to obtain a DEA number allowing UNITED

23          CARE PHARMACY to dispense controlled substances.

24      e.    On or about May 5, 2005, ANDREW THOMAS RUSSO submitted an application

25          to set up an account with Heartland to process credit card payments for UNITED

26          CARE PHARMACY.

27      f.    On May 10, 2005, DENIS LEBORGNE sent an e-mail to, among others,

28          ANDREW THOMAS RUSSO at tomrusso58@hotmail.com describing how the

U.S. v. RUSSO, et al.
INDICTMENT            10

organization planned to operate UNITED CARE PHARMACIES, the mail and call center affiliates, physicians network and the existing online pharmacies.  In addition, the e-mail described three (3) phases as follows: (1.) Mail/call center affiliates, (2.) doctor affiliates and (3.) existing online pharmacies.

g.  On or about May 23, 2005, ANDREW THOMAS RUSSO filed articles of incorporation with the state of North Carolina to establish UNITED CARE PHARMACY, LLC.

h.  On or about August 1, 2005, DENIS LEBORGNE sent an e-mail to "Martin" inquiring as to the requirements to use "Martin's" computer back end services as part of UNITED CARE PHARMACY's OPAP.

i.  On or about August 22, 2005, DENIS LEBORGNE sent an e-mail to info@treppides.com and carbon copied ANDREW THOMAS RUSSO's e-mail account, tomrusso58@hotmail.com, stating that DENIS LEBORGNE needed to establish a European Union ("EU") "shelf company" and that DENIS LEBORGNE would wire the  money from a merchant account to pay for the associated fees.

j.  On or about August 25, 2005, ANDREW THOMAS RUSSO wired $3,500 to a bank in Cyprus to pay the fees for the EU "shelf company."

k.  On or about September 27, 2005, ANDREW THOMAS RUSSO submitted a new account form to Stat Pharmaceuticals.

l.  On or about September 23, 2005, DENIS LEBORGNE sent an e-mail with a subject of "3 personal accounts needed" to info@treppides.com and carbon copied tomrusso58@hotmail.com and Salvator Lamorte, a/k/a Sal Lamorte at slamorte@hushmail.com, advising "Andreas" that DENIS LEBORGNE wanted to open bank accounts in Cyprus for ANDREW THOMAS RUSSO, DENIS LEBORGNE and Sal Lamorte and asked "Andreas" to forward the necessary information on how to transfer funds in and out of those accounts.

U.S. v. RUSSO, et al.
INDICTMENT                    11

m.  On or about the dates set forth in the table below, UNITED CARE PHARMACY caused to be delivered the following quantities of Phentermine to the Northern District of California:

| Date | Quantity of Phentermine |
|------|------------------------|
| October 4, 2005 | 30 tablets |
| November 18, 2005 | 90 tablets |
| December 7, 2005 | 90 tablets |
| December 7, 2005 | 90 tablets |
| January 31, 2006 | 90 tablets |
| March 2, 2006 | 30 tablets |
| March 2, 2006 | 90 tablets |

n.  On or about the dates set forth in the table below, ANDREW THOMAS RUSSO wired the amounts in the following table to Wells Fargo in the Northern District of California and into an account belonging to an Affiliate of the OPAP operated by ANDREW THOMAS RUSSO, DENIS LEBORGNE, and DAVID JOHN:

| Date | Amount of wire |
|------|----------------|
| October 18, 2005 | $3,349.10 |
| November 7, 2005 | $864.00 |
| November 15, 2005 | $1,758.10 |
| November 22, 2005 | $2,735.00 |
| December 2, 2005 | $13,818.50 |
| December 9, 2005 | $7,935.70 |
| December 13, 2005 | $3,247.80 |
| December 29, 2005 | $6,656.21 |

///

///

///

U.S. v. RUSSO, et al.
INDICTMENT                                12

1    COUNT TWO:       (18 U.S.C. § 1956(h) - Conspiracy to Launder Money)

2          35.    The factual allegations of paragraphs 1 through 34 above are realleged and

3    incorporated herein by reference.

4          36.    Beginning in or about March 2005, the exact date being unknown, and continuing

5    until in or about January 2006, in the Northern District of California and elsewhere, defendants

6                          ANDREW THOMAS RUSSO,
                              DENIS LEBORGNE, and
7                               DAVID JOHN,

8    did knowingly conspire and agree with others known and unknown to the Grand Jury, to launder

9    money in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

10                        OBJECT OF THE CONSPIRACY

11         37.    The object of the conspiracy was for the conspirators to obtain large quantities of

12   funds, thereby enriching themselves, in exchange for distributing and dispensing controlled

13   substances for other than a legitimate medical purpose and not in the usual course of professional

14   practice.

15                          MANNER AND MEANS

16         38.    It was part of the money laundering conspiracy that:

17   a.     defendants shipped customers controlled substances as previously described in

18          paragraphs 1 through 34 above;

19   b.     defendants obtained customers' fees for the distribution of controlled substances,

20          knowing that the payment of those fees constituted the proceeds of unlawful

21          activity;

22   c.     after receiving funds in payment of the fees charged to the customers, defendants

23          caused the funds to be deposited into bank accounts of the various entities and

24          individuals involved in the conspiracy; and

25   d.     defendants then caused transfers of money from those bank accounts for the

26          purpose of paying the expenses incurred to conduct the unlawful drug sales, such

27          as shipping bills, wholesale prescription drug bills, pharmacy dispensing bills,

28

1    rent, and employee salaries, with the intent to further promote the ongoing

2    unlawful drug sales.

3                                OVERT ACTS

4    39.    In furtherance of the conspiracy and to achieve its objects, the following overt

5    acts, among others were committed in the Northern District of California and elsewhere:

6    a.    On or about August 22, 2005, DENIS LEBORGNE sent an e-mail to

7          info@treppides.com and carbon copied ANDREW THOMAS RUSSO's e-mail

8          account, tomrusso58@hotmail.com, stating that DENIS LEBORGNE needed to

9          establish a European Union ("EU") "shelf company" and that DENIS

10         LEBORGNE would wire the money from a merchant account to pay for the

11         associated fees.

12   b.    On or about August 25, 2005, ANDREW THOMAS RUSSO wired $3,500 to a

13         bank account in Cyprus to pay the fees for the EU "shelf company."

14   c.    On or about September 23, 2005, DENIS LEBORGNE sent an e-mail with a

15         subject of "3 personal accounts needed" to info@treppides.com and carbon copied

16         tomrusso58@hotmail.com and Salvator Lamorte, a/k/a Sal Lamorte at

17         slamorte@hushmail.com, advising "Andreas" that DENIS LEBORGNE wanted to

18         open Cypriot accounts for ANDREW THOMAS RUSSO, DENIS LEBORGNE

19         and Sal Lamorte and asked "Andreas" to forward the necessary information on

20         how to transfer funds in and out of those accounts.

21   d.    On or about the dates set forth in the table below, ANDREW THOMAS RUSSO

22         wired the amounts in the following table to Wells Fargo in the Northern District

23         of California and into an account belonging to an Affiliate of the OPAP operated

24         by ANDREW THOMAS RUSSO, DENIS LEBORGNE, and DAVID JOHN:

| Date | Amount of wire |
| --- | --- |
| October 18, 2005 | $3,349.10 |
| November 7, 2005 | $864.00 |
| November 15, 2005 | $1,758.10 |

U.S. v. RUSSO, et al.
INDICTMENT                           14

| Date | Amount of wire |
|------|----------------|
| November 22, 2005 | $2,735.00 |
| December 2, 2005 | $13,818.50 |
| December 9, 2005 | $7,935.70 |
| December 13, 200 | $3,247.80 |
| December 29, 2005 | $6,656.21 |

e.     On or about the dates set forth in the table below, ANDREW THOMAS RUSSO wired the following amounts to companies from which UNITED CARE PHARMACY obtained pharmaceuticals and services to operate UNITED CARE PHARMACY:

| Date | Amount | Recipient |
|------|--------|-----------|
| October 6, 2005 | $154,073.53 | Bergen Brunswig |
| October 14, 2005 | $276,217.86 | Bergen Brunswig |
| October 27, 2005 | $250,000.00 | Amerisource |
| November 3, 2005 | $250,000.00 | Bergen Brunswig |
| November 21, 2005 | $400,000.00 | Amerisource |
| November 22, 2005 | $139,476.23 | Fed Ex |
| November 29, 2005 | $152,174.60 | UPS |
| November 29, 2005 | $141,365.31 | Fed Ex |
| January 9, 2006 | $200,000.00 | Amerisource |

COUNTS THREE through TEN:     (18 U.S.C. § 1956(a)(1)(A)(i) - Promotional Money Laundering)

40.     The factual allegations of paragraphs 1 through 39 above are realleged and incorporated herein by reference.

41.     From in or about March 2005 through at least March 2006, defendants maintained bank accounts in the names and with the account numbers as charged in the chart below, which were used to receive funds from illegally distributed controlled substances.

U.S. v. RUSSO, et al.
INDICTMENT                              15

42.   From on or about March 2005 through at least March 2006, funds from these bank accounts were used to pay expenses of the illegal drug scheme.

43.   On or about the dates enumerated as to each count, in the Northern District of California, and elsewhere, defendant,

ANDREW THOMAS RUSSO and<br>
DENIS LEBORGNE,

knowingly conducted financial transactions affecting interstate commerce, in the approximate amounts set forth below, which involved the proceeds of specified unlawful activity, that is the illegal distributing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846, with the intent to promote the carrying on of the specified unlawful activity, and while conducting such financial transactions knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity; that is, the defendant caused monies that had been paid to the defendants for controlled substances defendants had illegally distributed through web sites controlled by the defendants to be transferred to the payees set forth below, to promote the unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2:

| Count | Date | Amount of wire | Sending Account | Recipient Account |
|---|---|---|---|---|
| 3 | 10/18/2005 | $3,349.10 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 4 | 11/7/2005 | $864.00 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 5 | 11/15/2005 | $1,758.10 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 6 | 11/22/2005 | $2,735.00 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 7 | 12/2/2005 | $13,818.50 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 8 | 12/9/2005 | $7,935.70 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |
| 9 | 12/13/2005 | $3,247.80 | SunTrust Acct. 1000034925817 | Wells Fargo Acct. 3117676910 |

| Count | Date | Amount of wire | Sending Account | Recipient Account |
|-------|------|----------------|-----------------|-------------------|
| 10 | 12/29/2005 | $6,656.21 | SunTrust<br>Acct. 1000034925817 | Wells Fargo<br>Acct. 3117676910 |

FIRST FORFEITURE ALLEGATION: (21 U.S.C. §§ 853(a) – Drug Forfeiture)

44. The factual allegations contained in paragraphs 1 through 34 and Count One of this Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853(a)(1) and (a)(2).

45. Upon a conviction of any of the offenses alleged in Counts One through Eight, defendants,

ANDREW THOMAS RUSSO,<br>
DENIS LEBORGNE,<br>
DAVID JOHN, and<br>
JOHN F. TUITE,

shall forfeit to the United States all right, title and interest in property constituting and derived from any proceeds, defendants obtained, directly or indirectly, as a result of said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including but not limited to a sum of money equal to the total amount of proceeds defendants derived from the commission of said offenses.

46. If, as a result of any act or omission of the defendants, any of said property

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

U.S. v. RUSSO, et al.<br>
INDICTMENT           17

1   any and all interest defendants have in any other property up, to value of the property described

2   in paragraph 45 above, shall be forfeited to the United States pursuant to Title 21, United States

3   Code, Section 853(p).

4          All in violation of Title 21, United States Code, Sections 853(a)(1),(a)(2), (p) and Rule

5   32.2 of the Federal Rules of Criminal Procedure.

6   SECOND FORFEITURE ALLEGATION :  (18 U.S.C. § 982(a)(1) – Money Laundering
7                                                             Forfeiture)

8          47.    The factual allegations contained in paragraphs 1 through 45 and Counts Nine

9   through Seventeen of this Indictment are hereby realleged and by this reference fully

10  incorporated herein for the purpose of alleging forfeiture pursuant to Title 18, United States

11  Code, Section 982(a)(1).

12         48.    Upon a conviction of any of the offenses alleged in Counts Two through Ten,

13  defendants,

14                          ANDREW THOMAS RUSSO,
                            DENIS LEBORGNE, and
15                          DAVID JOHN,

16  shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all

17  right, title and interest in property, real and personal, involved in said violation, or any property

18  traceable to such property, including but not limited to the following:

19              a.    all commission, fees and other property constituting proceeds of said
                      offense;
20
                b.    all property used in any manner to commit or facilitate the commission of
21                    said offense;

22              c.    a sum of money equal to the total amount of money involved in the
                      commission of said offense.
23
           49.    If, as a result of any act or omission of the defendants, any of said property
24
                a.    cannot be located upon the exercise of due diligence;
25
                b.    has been transferred or sold to or deposited with, a third person;
26
                c.    has been placed beyond the jurisdiction of the Court;
27
                d.    has been substantially diminished in value; or
28

U.S. v. RUSSO, et al.
INDICTMENT                                    18

e.     has been commingled with other property which cannot be divided without difficulty;

any and all interest defendants have in any other property, up to value of the property described in paragraph 48 above, shall be forfeited to the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All in violation of Title 18, United States Code, Sections 982, 1956, and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:  15 NOV 06                          A TRUE BILL.

                                           FOREPERSON

KEVIN V. RYAN
United States Attorney


W. DOUGLAS SPRAGUE
Acting Chief, Criminal Division

(Approved as to form:                      )
                    AUSA KEWALRAMANI

U.S. v. RUSSO, et al.
INDICTMENT                    19

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

*SEALED BY ORDER OF THE COURT*

**FILED**

### OFFENSE CHARGED

Count One: Title 21 § 846 - Conspiracy to distribute controlled substances
Count Two: Title 18 § 1956(h) - Conspiracy to launder funds
Counts Three-Ten - Title 18 § 1956(a)(1)(A)(i) - Money Laundering

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:

Count 1 - 3 years imprisonment, $250,000 fine, 1 year supervised release, $100 special assessment
Counts 2-10 - 20 years imprisonment, $500,000 or twice the value of property involved, 3 years supervised release

**DEFENDANT - U.S.**

2006 NOV 15  A 11: 52

ANDREW THOMAS RUSSO

DISTRICT COURT NUMBER

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S J

CR 06 00748 RMW
HRL

### PROCEEDING

Name of Complainant Agency, or Person (&Title, if any)

S/A Brandon Bridgers - DEA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y   ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM    KEVIN V. RYAN

☒ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)    H. H. (SHASHI) KEWALRAMANI

**DEFENDANT**

### IS *NOT* IN CUSTODY

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges   ☐ Fed'l   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time: _____

Before Judge: _____

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

SEALED BY ORDER
OF THE COURT

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

FILED

### OFFENSE CHARGED

Count One: Title 21 § 846 - Conspiracy to distribute controlled substances
Count Two: Title 18 § 1956(h) - Conspiracy to launder funds
Counts Three-Ten - Title 18 § 1956(a)(1)(A)(i) - Money Laundering

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

### PENALTY:

Count 1 - 3 years imprisonment, $250,000 fine, 1 year supervised release, $100 special assessment
Counts 2-10 - 20 years imprisonment, $500,000 or twice the value of property involved, 3 years supervised release

**DEFENDANT - U.S.**

2006 NOV 15 A 11: 52

DENIS LEBORGNE

DISTRICT COURT NUMBER

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J

CR

## 06   00748   RMW

HRL

### PROCEEDING

Name of Complainant Agency, or Person (&Title, if any)

S/A Brandon Bridgers - DEA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y   ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM    KEVIN V. RYAN

☒ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)   H. H. (SHASHI) KEWALRAMANI

### DEFENDANT

**IS NOT IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons
   was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   } ☐ Fed'l   ☐ State

   If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

Month/Day/Year

**DATE OF ARREST** ▶

Or... if Arresting Agency & Warrant were not

Month/Day/Year

**DATE TRANSFERRED TO U.S. CUSTODY** ▶

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____

Before Judge: _____

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

| BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT |
| ☐ SUPERSEDING |

*SEALED BY ORDER OF THE COURT*

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

**FILED**

---

### OFFENSE CHARGED

Count One: Title 21 § 846 - Conspiracy to distribute controlled substances
Count Two: Title 18 § 1956(h) - Conspiracy to launder funds

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

**DEFENDANT - U.S.**

2006 NOV 15  A 11: 53

DAVID JOHN

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J

DISTRICT COURT NUMBER

**PENALTY:**
Count 1 - 3 years imprisonment, $250,000 fine, 1 year supervised release, $100 special assessment
Count 2 - 20 years imprisonment, $500,000 or twice the value of property involved, 3 years supervised release

CR 06 00748 RMW

HRL

---

### PROCEEDING

**Name of Complaintant Agency, or Person (&Title, if any)**

S/A Brandon Bridgers - DEA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y  ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

**Name and Office of Person Furnishing Information on THIS FORM**
KEVIN V. RYAN
☒ U.S. Att'y  ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y (if assigned)**
H. H. (SHASHI) KEWALRAMANI

---

### DEFENDANT

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges  } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

**DATE OF ARREST** ➤ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ➤ Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time:

Before Judge:

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

FILED

### OFFENSE CHARGED

Count One: Title 21 § 846 - Conspiracy to distribute controlled substances

SEALED BY ORDER OF THE COURT

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:
Count 1 - 3 years imprisonment, $250,000 fine, 1 year supervised release, $100 special assessment

**DEFENDANT - U.S.**   2006 NOV 15 A 11: 53

JOHN TUITE

RICHARD W. WIEKING
CLERK
**DISTRICT COURT NUMBER** U.S. DISTRICT COURT
NO. DIST. OF CA. S.J

CR 06 00748 RMW

HRL

### PROCEEDING

**Name of Complainant Agency, or Person (&Title, if any)**

S/A Brandon Bridgers - DEA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

**Name and Office of Person Furnishing Information on THIS FORM**   KEVIN V. RYAN

☒ U.S. Att'y ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y (if assigned)**   H. H. (SHASHI) KEWALRAMANI

### DEFENDANT

**IS *NOT* IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges       } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   If "Yes" give date filed
☐ No

**DATE OF ARREST** ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____

Before Judge: _____

Comments: